IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-00282-01-CR-W-RK |
| | ) | |
| | ) | |
| HERBERT G. GREEN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Herbert Green's Motion to Suppress Evidence. (Doc. No. 23). The Government has filed suggestions in opposition to Defendant's motion (Doc. No. 25).

An evidentiary hearing on Defendant's motion was held. (Doc. No. 32). During the hearing, the Government called Lafayette County Sheriff's Department Detective Martin Dye, Kansas City, Missouri Police Department Officer Justin Crump, Kansas City, Missouri Police Department Detective Antonio Garcia, and Kansas City, Missouri Police Department Sergeant Rodney Gentry to testify. The following exhibits were offered and admitted into evidence:

| | |
|---|---|
| Government's Exhibit 1: | Platte County search warrant; |
| Government's Exhibit 2: | Federal search warrant; |
| Government's Exhibit 3: | Return for federal search warrant; |
| Government's Exhibit 4: | Consent to search cell phone; |
| Government's Exhibit 5: | Photo from Defendant's cell phone; |
| Government's Exhibit 6: | Photo from Defendant's cell phone; |
| Government's Exhibit 7: | Photo from Defendant's cell phone; |
| Government's Exhibit 8: | Photo of box interdicted at Fed Ex office; |
| Government's Exhibit 9: | Photo of address label on box; |
| Government's Exhibit 10: | Photo of front of apartment building; |
| Government's Exhibit 11: | Photo of staircase inside apartment building; |
| Government's Exhibit 12: | Photo of Apartment 3's door; |
| Government's Exhibit 14: | Photo of box inside Apartment 3; |
| Government's Exhibit 15: | Photo of heat sealer in kitchen; |
| Government's Exhibit 16: | Photo of heat sealer in kitchen; |
| Government's Exhibit 17: | Photo of discarded plastic bags in kitchen trash; |
| Government's Exhibit 19: | Photo of bed with mattress; |
| Government's Exhibit 20: | Photo of mattress lifted up showing handgun underneath; |

| | | |
|---|---|---|
| Government's Exhibit 21: | Photo of handgun underneath mattress; |
| Government's Exhibit 22: | Photo of body armor on closet floor; |
| Government's Exhibit 23: | Photo of body armor on closet floor; |
| Government's Exhibit 24: | Photo of case inside closet; |
| Government's Exhibit 25: | Photo of case; |
| Government's Exhibit 26: | Photo of rifle inside case; |
| Government's Exhibit 27: | Photo of Apartment 3's living room showing couch/lamp; |
| Government's Exhibit 28: | Photo of Styrofoam cooler found inside box; |
| Government's Exhibit 29: | Photo of green wrapped marijuana brick; |
| Government's Exhibit 30: | Photo of green wrapped brick cut open; |
| Government's Exhibit 33: | Photo of Defendant holding currency in his arm; and |
| Government's Exhibit 34: | Photo of Defendant holding currency by his head. |

## I. FACTS

Kansas City, Missouri Police Department Detective Antonio Garcia is assigned to the Missouri Western Narcotics Interdiction Task Force ("MOWIN") (Tr. at 4, 56). On August 30, 2017, Detective Garcia was working at the Federal Express sort center and noticed a large brown cardboard box with a return label from Brownsville, Texas, a known source city for illegal narcotics (Tr. at 5-7; Gvt. Exhs. 8, 9). The seams of the packaged were glued, which is a common indicator of illegal narcotics (Tr. at 29). Detective Garcia placed this box with several unrelated boxes and responded with his narcotics dog "Zina" (Tr. at 7). Zina immediately alerted to the box, indicating she detected the odor of narcotics (Tr. at 7, 31).

Law enforcement decided to conduct a controlled delivery to the address listed on the box, 8008 Northwest Milrey Drive, Apartment 3, Kansas City, Missouri (Tr. at 8, 31). A search warrant for the box and an anticipatory search warrant for the address to which the box was to be delivered were obtained from Platte County, Missouri (Tr. at 8, 56; Gvt. Exh. 1). Detective Garcia was stationed inside the apartment building to observe the delivery (Tr. at 9). MOWIN Task Force Detective Ryan Painter delivered the box; when no one answered the door at the apartment, he left the box in front of the door (Tr. at 10, 32). Defendant arrived approximately eight minutes later, exited his vehicle and walked up to Apartment 3 while talking on a cell phone (Tr. at 10-11, 33). Defendant told the individual on the phone that the box had arrived (Tr. at 11, 34). He then unlocked the door to Apartment 3, picked up the box, placed it inside and left (Tr. at 12, 34-35). Detective Garcia advised members of his squad that Defendant was exiting the apartment building and Defendant was arrested and taken into custody (Tr. at 12, 59, 68). MOWIN Sergeant Rodney Gentry spoke to Defendant and obtained written consent to search

2

Defendant's cell phone (Tr. at 26, 59-60; Gvt. Exh. 4). Defendant wrote the cell phone's passcode in the top left corner of the consent form (Tr. at 60-61; Gvt. Exh. 4). The phone contained pictures of narcotics, weapons, large stacks of currency, and appeared to have all been taken inside Apartment 3 (Tr. at 24, 26-28, 62-63; Gvt. Exhs. 5, 6, 7, 33, 34).

Members of the Kansas City, Missouri Police Department Tactical Response Team entered Apartment 3 to clear the apartment for people to ensure it was safe to execute the search warrant (Tr. at 12-13, 36, 41). The tactical team went through every room and looked in any place that a person could hide (Tr. at 42, 54). The tactical team's practice is to move furniture and mattresses to make sure nobody in hiding beneath (Tr. at 19, 54). Approximately ten minutes later, the tactical team was finished and Detective Pickens advised Detective Garcia they had seen some weapons and marijuana inside the apartment, and that the box was in the kitchen (Tr. at 13, 36). Detective Garcia then performed a walk-though of the apartment with members of the tactical team so they could point out items they had observed in plain view while clearing the apartment (Tr. at 14). Detective Garcia observed a heat sealer, which is commonly used to package narcotics; used bags in the trashcan, which had been used to package narcotics; a handgun between the mattresses in a bedroom; and a bulletproof vest laying on the floor in the closet (Tr. at 16-21; Gvt. Exhs. 15, 16, 17, 19, 20, 21, 22, 23). No items were seized at this time (Tr. at 14, 48, 65).

Detective Garcia returned to the kitchen and opened the cardboard box (Tr. at 21, 38). A Styrofoam cooler was located inside the box (Tr. at 21; Gvt. Exhs. 28). Detective Garcia opened the cooler and discovered a large bundle of marijuana wrapped in green cellophane (Tr. at 22; Gvt. Exhs. 29, 30). Between the layers of cellophane, Detective Garcia discovered mustard, which is commonly used to conceal the odor of illegal narcotics (Tr. at 22). The marijuana weighed 24.4 pounds (Tr. at 23). Detective Garcia took the box and its contents, as well as Defendant's cell phone, back to headquarters (Tr. at 23).

Law enforcement next obtained a federal search warrant for the apartment (Tr. at 64; Gvt. Exh. 2). Pursuant to the warrant, officers recovered an AR-15 rifle from the bedroom closet, a pistol, a fully-loaded magazine, three other magazines and ammunition, a bullet proof vest, a roll of heat sealed bags, a digital scale, a hand-written ledger, five baggies of powder substance, one vacuum sealed bag of marijuana buds, and a shoe box with marijuana residue (Tr. at 25, 81; Gvt. Exhs. 3, 24, 25, 26).

3

## II. ANALYSIS

Defendant seeks to suppress all evidence based on alleged Fourth Amendment violations. Specifically, Defendant argues the initial search exceeded the scope of the state warrant and that the federal warrant was obtained based on improperly discovered information. These arguments are without merit.

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of [a] warrant." United States v. Ramirez, 523 U.S. 65, 71 (1998). In Bailey v. United States, the Supreme Court stated "'the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence,' and '[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.'" 568 U.S. 186, 194 (2013)(quoting Michigan v. Summers, 452 U.S. 692, 702-03 (1981)). "When law enforcement officers execute a search warrant, safety considerations require that they secure the premises." Id. at 195.

In this case, law enforcement lawfully entered the apartment pursuant to the anticipatory search warrant. "When the law enforcement officers entered . . . they had no way of knowing how many people were there." United States v. Horne, 4 F.3d 579, 586 (8th Cir. 1993). Knowing that a thirty-five pound box believed to contain narcotics was somewhere inside, the tactical team entered to secure the premises to ensure it was safe for officers to execute the warrant. The tactical team was inside the apartment for approximately ten minutes and only looked in places that a person could be hiding. While doing so, members of the tactical team observed in plain view a handgun, bulletproof vest, marijuana, and items commonly used to package narcotics. Although these items could have immediately been seized, law enforcement instead used their observations to obtain a federal search warrant for the apartment. See United States v. Evans, 966 F.2d 398, 400 (8th Cir. 1992)("The 'plain view' doctrine permits police to seize an item not specified on a search warrant if the police are lawfully in a position to observe the item and its incriminating character is immediately apparent."). The Court, therefore, finds that the tactical team's initial securing of the premises was reasonable and did not exceed the scope of the state warrant.

## III. CONCLUSION

For the reasons stated above, it is hereby

RECOMMENDED that Defendant Green's Motion to Suppress Evidence be denied.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 14th day of November, 2018, at Kansas City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge